## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Mark BAGINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 15-1225-RC |
| Loretta LYNCH, in her capacity as ATTORNEY | ) | |
| GENERAL of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Loretta Lynch, Attorney General of the United States, and Thomas E.

Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,

hereby move to dismiss this action pursuant to Federal Rule 12(b)(6) for the reasons

stated in the attached memorandum.

Dated:  November 24, 2015                    Respectfully Submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

JOHN R. TYLER
Assistant Director, Federal Programs
Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil
Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room
5377
Washington, D.C. 20530
Tel.:   (202) 514-9836
Fax.:   (202) 616-8470
Email: amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Mark BAGINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 15-1225-RC |
| Loretta LYNCH, in her capacity as ATTORNEY | ) | |
| GENERAL of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room 5377
Washington, D.C. 20530
Tel.:   (202) 514-9836
Fax.:   (202) 616-8470
Email: amy.powell@usdoj.gov

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...........................................................................................................1

STATUTORY BACKGROUND .................................................................................2

FACTUAL BACKGROUND.......................................................................................4

ARGUMENT ................................................................................................................5

I.      Title 18, Section 922(g)(1) Prohibits Plaintiff from Possession of a Firearm
Because His Conviction is Punishable by Imprisonment for More Than
Two Years................................................................................................................6

II.     The Second Amendment Does Not Require that Criminals Convicted of
Serious Crimes Be Permitted to Own Firearms ..................................................8

      A.      Plaintiff's Criminal Record Categorically Excludes Him from the
Protection of the Second Amendment ....................................................8

      B.      Section 922(g)(1), as Applied to Plaintiff, Satisfies Any Level of
Constitutional Means-Ends Scrutiny ....................................................11

            1.      If the Second Amendment Applies At All, the Court Should
Apply No More Than Intermediate Scrutiny ............................11

            2.      Congress Advanced a Substantial Governmental Interest by
Concluding that Individuals with a Criminal Record Like
Plaintiff's Conviction for Driving While Impaired Should
Not Be Permitted to Own Firearms ...........................................12

            3.      Plaintiff is Not Entitled to an Exemption from this Facially
Reasonable Law ....................................................................17

CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Angelex Ltd. v. United States*,
   No. CV 15-0056 (RC), 2015 WL 5011421 (D.D.C. Aug. 24, 2015) ........................................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 6

*Barrett v. United States*,
   423 U.S. 212 (1976) ............................................................................................... 12

*Begay v. United States,*
   553 U.S. 137 (2008) ............................................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 6

*Bonidy v. U.S. Postal Serv.*,
   790 F.3d 1121 (10th Cir. 2015) .............................................................................. 11

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ................................................................................. 5

*Burrell v. United States*,
   384 F.3d 22 (2d Cir. 2004) ..................................................................................... 13

*Clark v. Jeter*,
   486 U.S. 456 (1988) ............................................................................................... 12

*Com. v. Savage*,
   430 Mass. 341 (1999) .............................................................................................. 6

*Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*,
   452 Mass. 639, 897 N.E.2d 50 (2008) ................................................................... 16

*Dickerson v. New Banner Inst., Inc.*,
   460 U.S. 103 (1983) ............................................................................................... 13

*\*Dist. of Columbia v. Heller*,
   554 U.S. 570 (2008) ...................................................................................... <u>passim</u>

*Drake v. Filko*,
    724 F.3d 426 (3d Cir. 2013) ............................................... 15

*Duke Energy Field Servs. Assets, L.L.C. v. FERC*,
    150 F. Supp. 2d 150 (D.D.C. 2001) ....................................... 6

*Heller v. Dist. of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ........................................ 8, 12

*Heller v. Dist. of Columbia*,
    801 F.3d 264 (D.C. Cir. 2015) .............................................. 8

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008) ............................................ 15

*Kowal v. MCI Communications Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ............................................. 6

*Lewis v. United States*,
    445 U.S. 55 (1980) ........................................................... 13

*McDonald v. Chicago*,
    561 U.S. 742 (2010) ......................................................... 14

*Mich. Dept. of State Police v. Sitz*,
    496 U.S. 444 (1990) ......................................................... 15

*Nat'l Rifle Ass'n of America, Inc. v. Reno*,
    216 F.3d 122 (D.C. Cir. 2000) .............................................. 4

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014) ............................................. 6

*Scarborough v. United States*,
    431 U.S. 563 (1977) ......................................................... 12

*Schall v. Martin*,
    467 U.S. 253 (1984) ......................................................... 13

*\*Schrader v. Holder*,
    704 F.3d 980 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 512 (2013) ............................... passim

*Small v. United States*,
    544 U.S. 385 (2005) ......................................................... 13

*Suarez v. Holder*,
    No. 1:14-CV-968, 2015 WL 685889 (M.D. Pa. Feb. 18, 2015)...............................................7

*United States v. Chapman*,
    666 F.3d 220 (4th Cir. 2012) ....................................................................... 17

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ......................................................................... 11

*United States v. Coleman*,
    158 F.3d 199 (4th Cir. 1998) ............................................................................7

*United States v. Daugherty*,
    264 F.3d 513 (5th Cir. 2001) ................................................................... 12, 15

*United States v. Essig*,
    10 F.3d 968 (3d Cir. 1993) .............................................................................7

*United States v. Everist*,
    368 F.3d 517 (5th Cir. 2004) ....................................................................... 13

*United States v. Garrett*,
    903 F.2d 1105 (7th Cir. 1990) ..................................................................... 13

*United States v. Leuschen*,
    395 F.3d 155 (3d Cir. 2005) ............................................................................7

*United States v. Logan*,
    552 U.S. 23 (2007) .........................................................................................7

*United States v. Miller*,
    604 F. Supp. 2d 1162 (W.D. Tenn. 2009) ................................................... 18

*United States v. Moore*,
    666 F.3d 313 (4th Cir. 2012) ...........................................................................9

*United States v. Philip Morris Inc.*,
    116 F. Supp. 2d 131 (D.D.C. 2000)................................................................5

*United States v. Pruess*,
    703 F.3d 242 (4th Cir. 2012) ....................................................................... 15

*United States v. Salerno*,
    481 U.S. 739 (1987) ..................................................................................... 13

*United States v. Schmidt*,
   571 F.3d 743 (8th Cir. 2009) ................................................................ 12

*United States v. Schoolcraft*,
   879 F.2d 64 (3d Cir.1989) ...................................................................... 7

*United States v. Scroggins*,
   599 F.3d 433 (5th Cir. 2010) ................................................................ 17

*\*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010) ......................................................... 10, 15

*United States v. Staten*,
   666 F.3d 154 (4th Cir. 2011) .................................................................. 9

*United States v. Tooley*,
   717 F. Supp. 2d 580 (S.D. W. Va. 2010)............................................. 17

*United States v. Torres-Rosario*,
   658 F.3d 110 (1st Cir. 2011) ................................................................ 14

*\*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010) ............................................. 9, 10, 13, 14

*United States v. Weatherford*,
   471 F.2d 47 (7th Cir. 1972) ................................................................. 13

*United States v. Williams*,
   616 F.3d 685 (7th Cir. 2010) ................................................................ 11

*United States v. Yancey*,
   621 F.3d 681 (7th Cir. 2010) .................................................................. 9

*Van Der Hule v. Holder*,
   759 F.3d 1043 (9th Cir. 2014) ............................................................. 11

*Virginia v. Harris*,
   558 U.S. 978 (2009) ............................................................................. 16

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ............................................................................. 12

*Warren v. Dist. of Columbia*,
   353 F.3d 36 (D.C. Cir. 2004)................................................................. 6

*Wasylow v. Glock*,
    975 F. Supp. 370 (D. Mass. 1996) ........................................................................ 14

## FEDERAL STATUTES

15 U.S.C. §§ 901 ...................................................................................................... 2
18 U.S.C. § 921(a)(20)(B) ................................................................................ passim
18 U.S.C. § 922(g) ........................................................................................... passim
Pub. L. No. 103-159, 107 Stat. 1536 ...................................................................... 4
Pub. L. No. 87-342, 75 Stat. 757 (1961) ............................................................ 2, 13
Pub. L. No. 90-351, § 901(a)(2) ............................................................................. 3

## STATE STATUTES

15 Maine Rev. Stat. Ann. § 393 ............................................................................ 10
D.C. Stat. Ann. § 22-4503(a)(1) ........................................................................... 10
Ga. Code Ann. § 16-11-131 ................................................................................. 10
Iowa Code Ann. §§ 724.25 ................................................................................... 10
Mass. Gen. Law c. 90 § 24(1)(a)(1) ....................................................................... 6
Mass. Gen. Law 140 § 131 .................................................................................. 10
Mass. Gen. L. c. 274, § 1 ....................................................................................... 4

## RULES AND REGULATIONS

28 C.F.R. § 25.6(c)(1)(iv) ....................................................................................... 4
28 C.F.R. § 25.7 ...................................................................................................... 4

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) ........................................................................................................... 5

## LEGISLATIVE MATERIAL.

114 Cong. Rec. 13219 (May 14, 1968) .................................................................. 3
S. Rep. No. 88-1340, at 1 (1964) ...................................................................... 2, 3
S. Rep. No. 89-1866, at 53 (1966) ......................................................................... 3
S. Rep. No. 90-1097, at 28 (1968) ......................................................................... 3

## INTRODUCTION

Congress reasonably determined that certain categories of criminals convicted of dangerous crimes should not be permitted to own firearms.  The Gun Control Act of 1968 prohibits individuals convicted of crimes punishable by imprisonment for a term of more than one year from possessing firearms. 18 U.S.C. § 922(g)(1).  The Act includes an exception for certain misdemeanors punishable by less than two years' imprisonment.

A Massachusetts court convicted Plaintiff Mark Baginski of drunk driving, which is a crime punishable by a term of imprisonment of up to two and a half years.  He is therefore subject to the firearms disability.  Mr. Baginski argues that application of the statute to him violates the terms of the statute and the Second Amendment.  Plaintiff's statutory and constitutional claims fail.

First, Plaintiff argues that the Government mistakenly denied him access to a weapon because he was convicted of misdemeanor driving under the influence, which does not have a statutory mandatory minimum term of imprisonment.  Plaintiff's statutory argument, however, is foreclosed by D.C. Circuit precedent.  Because he was convicted of a crime punishable by a term of imprisonment exceeding two years, he is not eligible for the misdemeanor exception.

Second, Plaintiff argues that his conviction for drunk driving is insufficiently serious to deprive him of the right to bear arms under the Second Amendment.  But Section 922(g)(1) applies solely to persons with prior convictions for serious crimes, and so it does not implicate the Second Amendment's protection of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("*Heller I*").  By driving drunk, Plaintiff showed himself to be criminally irresponsible and dangerous to the public with a lethal instrumentality.

1

Moreover, even if the protection of the Second Amendment extends to this class of criminals, the restriction readily survives intermediate scrutiny.  The compelling interests in crime prevention, public safety and prevention of firearm deaths justify Congress's reliance on a state determination that this is a serious crime that is punishable by a severe sentence.  According to the National Highway Traffic Safety Administration, in 2013, 10,076 people were killed in alcohol-impaired driving crashes, an average of one alcohol-impaired-driving fatality occurred every 52 minutes.  As acknowledged by extensive caselaw, drunk driving is a serious and deadly crime, showing reckless disregard for human life.  It is thus plainly and facially reasonable for Congress to rely on the state determination that it is a severe crime, justifying a firearms disability.  Congress is justified in concluding that reckless and potentially deadly use of motor vehicle should disqualify anyone from owning a firearm.

Finally, the Court should reject Plaintiff's attempt to make a personal exception for himself based on his "unique personal circumstances."  Complaint ¶ 26.  Plaintiff alleges that he is constitutionally entitled to a personal exemption from application of section 922(g)(1) based on his personal circumstances and his "generally law-abiding record over the years."  *Id*.  The Constitution, however, does not compel such a result.

## STATUTORY BACKGROUND

In 1961, Congress amended the Federal Firearms Act of 1938, 15 U.S.C. §§ 901 *et seq*., to prohibit any person "convicted of a crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961).  Following a further, multi-year inquiry that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), Congress found that "the

ease" through which firearms could be obtained by "criminals . . . and others whose possession of such weapons is similarly contrary to the public interest is a significant factor in the prevalence of lawlessness and violent crime in the United States."   Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, § 901(a)(2).  In this inquiry, Congress identified "a serious problem of firearms misuse in the United States," S. Rep. No. 89-1866, at 53 (1966), taking into account the testimony of law enforcement officials regarding the "tragic results" of firearms misuse by persons with prior criminal convictions. S. Rep. No. 88-1340, at 12, 17-18. Statistical evidence showed "the terrible abuse and slaughter caused by virtually unrestricted access to firearms by all individuals, regardless of their backgrounds." 114 Cong. Rec. 13,219 (May 14, 1968) (statement of Sen. Tydings).  "[P]ersons with records of misdemeanor arrests" were among those whose access to firearms concerned Congress. S. Rep. No. 88-1340, at 4.

Congress therefore determined to "regulate more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them," S. Rep. No. 89-1866 at 1, and to do so, Congress adopted statutory provisions limiting firearms access by persons with "criminal backgrounds." S. Rep. No. 90-1097, at 2113 (1968).   Of relevance here, Section 922(g)(1) provides that "[it] shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  Section 921(a)(20)(B) exempts from this prohibition "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  18 U.S.C. § 921(a)(20)(B).  Nor does the prohibition apply to "[a]ny conviction which has been expunged, or set aside or for

which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id*. § 921(a)(20).

Also relevant here, "[t]he Brady Handgun Violence Prevention Act of 1993 required the Attorney General to establish a 'national instant criminal background check system,' known as the NICS, to search the backgrounds of prospective gun purchasers for criminal or other information that would disqualify them from possessing firearms." *Nat'l Rifle Ass'n of America, Inc. v. Reno*, 216 F.3d 122, 125 (D.C. Cir. 2000); Pub. L. No. 103-159, § 103(b), 107 Stat. 1536. "Before selling a weapon, firearm dealers must submit the prospective purchaser's name, sex, race, date of birth, and state of residence to the NICS operations center at the FBI." *Id*.; 28 C.F.R. § 25.7. If a search reveals that the prospective purchaser may not legally possess a firearm, the dealer receives a purchase "denied" response from the NICS operations center.  216 F.3d at 125; 28 C.F.R. § 25.6(c)(1)(iv).

## FACTUAL BACKGROUND

Plaintiff Mark Baginski alleges that, in 2004, he was convicted in Massachusetts of operating a motor vehicle under the influence of alcohol.  Compl. ¶ 7.  Although in Massachusetts, driving while impaired is punishable by a fine and fees and a term of imprisonment of up to two and a half years, *see* Mass. Gen. L. c. 274 § 1, Plaintiff alleges that he was "sentenced to one year probation, ordered to pay various costs and fines, required to attend an alcohol awareness class, and lost his ability to drive in Massachusetts for 225 days."  Compl. ¶ 8.

Mr. Baginski further alleges that his only other convictions are for "minor traffic infractions"; that he "has no history of violent behavior"; that he "is not an unlawful user of or

addicted to any controlled substance"; that he "has not been adjudicated a mental defective or committed to a mental institution"; that he has not been dishonorably discharged; that he "has never renounced his citizenship"; and that he has never been the subject of a restraining order relating to an intimate partner.  Compl. ¶¶ 6, 9, 11.

According to the Complaint, Mr. Baginski attempted "to purchase a firearm for self-defense" on May 25, 2010.  Compl. ¶ 17.  "At the conclusion of the state seven day waiting period, Baginski learned that although Rhode Island authorities cleared him to purchase the firearm, [NICS] had advised that Baginski was prohibited from possessing firearms, and as a result, the transaction was canceled."  *Id.*  Plaintiff administratively appealed his NICS denial and was fingerprinted.  The Rhode Island authorities again "cleared him" but his appeal was rejected because he was prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g)(1) as a result of his Massachusetts conviction.  *Id.* ¶¶ 18-19.

The Complaint sets forth two claims – a statutory claim alleging that his drunk driving conviction should qualify for the misdemeanor exception, and an "as-applied" constitutional claim alleging that his firearms disability violates the Second Amendment.  Compl. ¶¶ 21-26. The Prayer for Relief seeks a declaratory judgment that Section 922(g)(1) is unconstitutional as applied to Plaintiff based on his misdemeanor conviction, and  also seeks injunctive relief preventing enforcement of Section 922(g)(1).

## ARGUMENT

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling on a motion to dismiss, a court presumes that the complaint's factual allegations are true and construes them in the plaintiff's favor to determine whether there is a valid legal claim.  *See, e.g., United States v. Philip Morris Inc.*, 116 F. Supp.

2d 131, 135 (D.D.C. 2000); *Angelex Ltd. v. United States*, No. CV 15-0056 (RC), 2015 WL

5011421, at *6 (D.D.C. Aug. 24, 2015).  To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court need not accept

legal conclusions cast as factual allegations, *Warren v. Dist. of Columbia*, 353 F.3d 36, 40 (D.C.

Cir. 2004), or "inferences drawn by [the plaintiff] if such inferences are unsupported by the facts

set out in the complaint," *Kowal v. MCI Communications Corp*., 16 F.3d 1271, 1276 (D.C. Cir.

1994).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (a complaint fails "if it tenders naked

assertions devoid of further factual enhancement"); *Ralls Corp. v. Comm. on Foreign Inv. in

U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014); *Duke Energy Field Servs. Assets, L.L.C. v. FERC*, 150

F. Supp. 2d 150, 154 (D.D.C. 2001).

**I.      Title 18, Section 922(g)(1) Prohibits Plaintiff from Possession of a Firearm Because
His Conviction is Punishable by Imprisonment for More Than Two Years.**

As Plaintiff concedes, his conviction is for a crime that is "punishable by imprisonment

for a term exceeding one year."  *See* 18 U.S.C. § 922(g)(1); Compl. ¶ 13.  In Massachusetts,

operating a vehicle under the influence is punished by "a fine of not less than five hundred nor

more than five thousand dollars or by imprisonment for not more than two and one-half years, or

both such fine and imprisonment."  Mass. Gen. Law c. 90 § 24(1)(a)(1).  Plaintiff's conviction

thereby satisfies the plain terms of Section 922(g)(1).  Moreover, it is not eligible for the

misdemeanor exception of section 921(a)(20)(B).  Although, under Massachusetts law, "an

initial offense of operating a motor vehicle while under the influence of liquor is a

misdemeanor," *Commonwealth v. Savage*, 430 Mass. 341, 346 (1999), the conviction is

punishable by a term of imprisonment that exceeds two years, and therefore falls outside the

terms of the misdemeanor exception.

Plaintiff argues that because his crime could be (and in fact was) punished by a term of imprisonment of less than two years, it is a "misdemeanor" that is "punishable by a term of imprisonment of two years or less." *See* Compl. ¶¶ 21-23. But Plaintiff's argument is foreclosed by the D.C. Circuit opinion in *Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 512 (2013). In *Schrader*, the D.C. Circuit upheld the application of Section 922(g)(1) to a conviction for common law assault, which had no statutory maximum or minimum. 704 F.3d at 986. The Court reasoned that "the term 'punishable' in the context of uncodified common-law offences . . . refers to the maximum potential punishment a court can impose, whether or not set by statute." *Id*. The D.C. Circuit held that common-law offenses "are capable of being punished by a term of imprisonment exceeding one year and thus fall within section 922(g)(1)'s purview," and further held that they are also ineligible for the misdemeanor exception in 921(a)(20)(B) "because such offenses are also capable of being punished by more than two years' imprisonment." *Id*. *See also United States v. Essig*, 10 F.3d 968, 971 (3d Cir. 1993) (misdemeanant did not fall within terms of Section 921(a)(20)(B)'s exclusion "because his state conviction is punishable by imprisonment for up to five years"), *superseded on other grounds*; *Suarez v. Holder,* No. 1:14-CV-968, 2015 WL 685889, at *4 (M.D. Pa. Feb. 18, 2015), *appeal pending*.[1]

---

[1] This is consistent with other uses of the term "punishable" in the criminal code. *See, e.g., United States v. Logan*, 552 U.S. 23 (2007) (stating that an offender would have been convicted of a crime punishable by a term exceeding one year if the offense carried a potential prison term of over two years); *United States v. Leuschen*, 395 F.3d 155 (3d Cir. 2005) (noting that the only qualification imposed by § 922(g)(1) is that the predicate conviction carry a potential sentence of greater than one year of imprisonment); *United States v. Schoolcraft*, 879 F.2d 64 (3d Cir.1989) (finding that the defendant did not fall within § 921(a)(20)(B)'s exclusion because his prior convictions had maximum sentences of seven years and twenty years); *United States v. Coleman*, 158 F.3d 199 (4th Cir. 1998) (finding that common law assault is an offense punishable by over two years because there was no maximum limitation other than constitutional limits).

Because Plaintiff was convicted of a misdemeanor punishable by up to  two and a half years' imprisonment, he falls squarely within the ambit of Section 922(g)(1), and does not qualify for the statutory exception set forth in Section 921(a)(20)(B). The Court should therefore dismiss Count I.

## II.      The Second Amendment Does Not Require that Criminals Convicted of Serious Crimes Be Permitted to Own Firearms.

### A.      Plaintiff's Criminal Record Categorically Excludes Him from the Protection of the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  In *Heller*, after determining that the Second Amendment conferred an individual right to keep and bear arms, 554 U.S. at 595, the Supreme Court emphasized that the "right secured by the Second Amendment is not unlimited" and that the "core" right of the Second Amendment is the defensive use of arms by "*law-abiding*, *responsible* citizens."  *Id*. at 626, 634-35 (emphasis added).[2]  Although the Supreme Court declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id*. at 626-27.  The Court described such "regulatory measures" as "presumptively lawful."  *Id*. at 627 n.26.

Courts have thus adopted a two-step inquiry.  "Given that there are certain types of firearms regulations that do not govern conduct within the scope of the Amendment," courts "first ask whether the activity or offender subject to the challenged regulation falls outside the

---

[2] The *Heller* case appeared before the D.C. Circuit twice after the remand from the Supreme Court.  The Supreme Court decision will be referred to herein as "*Heller I*."  *See* 554 U.S. 570.  The subsequent D.C. Circuit decisions will be referred to as "*Heller II*" and "*Heller III*," respectively.  *See Heller v. Dist. of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*); *Heller v. Dist. of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*).

scope of the Second Amendment's protection." *See Schrader*, 704 F.3d at 988-99 (quoting

*Heller II*, 670 F.3d 1244).  If that inquiry does not resolve the matter, then the court must

"determine whether the provision passes muster under the appropriate level of constitutional

scrutiny." *Id.* at 989

      In *Schrader*, the D.C. Circuit did not address the first step, finding it unnecessary because

Section 922(g)(1) passed muster under the appropriate level of scrutiny.  *See Schrader*, 704 F.3d

at 989.  Other courts have concluded that 18 U.S.C. § 922(g)(1) falls within *Heller*'s list of

presumptively lawful regulatory measures and does not require any further constitutional

scrutiny.  *See United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010) ("Nothing in *Heller*

can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)"); *United States v.*

*Staten*, 666 F.3d 154, 160 (4th Cir. 2011); *United States v. Moore*, 666 F.3d 313, 318 (4th Cir.

2012).

      The historical record supports the caution with which courts have approached requests to

extend *Heller*'s holding by recognizing Second Amendment protections for persons with prior

criminal convictions. "[M]ost scholars of the Second Amendment agree that the right to bear

arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could

disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010)

(quoting *Vongxay*, 594 F.3d at 1118).   *Heller I* identified the right protected by the 1689 English

Declaration of Rights as "the predecessor of our Second Amendment."  554 U.S. at 593.  This

document provided: "That the subjects which are Protestants may have arms for their defense . . .

as allowed by law," *id.*, and did not repeal the 1662 Militia Act, which authorized lieutenants of

the militia to disarm "any person or persons" judged to be "dangerous to the Peace of the

Kingdome." 13 & 14 Car. 2, c.3 § 1 (1662) (Eng.).  Moreover, "*Heller* identified, as a 'highly

influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 554 U.S. at 603). "The report asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Id.* (quoting Bernard Schwartz, 2 The Bill of Rights: A Documentary History 662, 665 (1971)).

Likewise, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Skoien*, 614 F.3d at 640.  Indeed, today, Mr. Baginski's Massachusetts conviction for driving under the influence would restrict him from possessing firearms under the laws of at least several states and the District of Columbia.[3]

In light of this history and practice, the right protected by the Second Amendment is properly understood not to extend to those convicted of serious crimes.  Here, because Plaintiff was convicted for driving while impaired – which Massachusetts punishes by up to two and a half years imprisonment – he cannot distinguish himself from those who historically have been "disqualified from the exercise of Second Amendment rights." *Vongxay*, 594 F.3d at 1115.

---

[3] *See, e.g.,* D.C. Stat. Ann. § 22-4503(a)(1) (disqualifying persons "convicted in any court of a crime punishable by imprisonment for a term exceeding one year"); Ga. Code Ann. § 16-11-131(b) (prohibiting firearm possession by persons "convicted of a felony by a court of this state or any other state" and providing that "'[f]elony' means any offense punishable by imprisonment for a term of one year or more"); Iowa Code Ann. §§ 724.25, .26 (prohibiting firearm possession by "[a] person who is convicted of a felony in a state or federal court" and providing that "the word 'felony' means any offense punishable in the jurisdiction where it occurred by imprisonment for a term exceeding one year, but does not include any offense, other than an offense involving a firearm or explosive, classified as a misdemeanor under the laws of the state and punishable by a term of imprisonment of two years or less"); 15 Maine Rev. Stat. Ann. § 393 (prohibiting possession of concealed firearms and imposing limitations on possession of other firearms by persons convicted of "[a] crime under the laws of any other state that, in accordance with the laws of that jurisdiction, is punishable by a term of imprisonment exceeding one year" except if that crime "is classified by the laws of that state as a misdemeanor and is punishable by a term of imprisonment of 2 years or less"); Mass. Gen. Law 140 § 131 (prohibiting possession of firearms by a person who has been convicted in Massachusetts of "a misdemeanor punishable by imprisonment for more than 2 years").

Plaintiff's claims should therefore be dismissed at this first stage of the Second Amendment

analysis.

**B.      Section 922(g)(1), as Applied to Plaintiff, Satisfies Any Level of Constitutional Means-Ends Scrutiny.**

Even if Plaintiff could assert a right under the Second Amendment, his claim would fail

under the "second step of the Second Amendment inquiry," as the D.C. Circuit held in *Schrader*.

**1.      If the Second Amendment Applies At All, the Court Should Apply No More Than Intermediate Scrutiny.**

"[T]he level of scrutiny applicable under the Second Amendment surely depends on the

nature of the conduct being regulated and the degree to which the challenged law burdens the

right." *Schrader*, 704 F.3d at 989.  Because the "core" right of the Second Amendment is the

defensive use of arms by "*law-abiding, responsible* citizens," *Heller I*, 554 U.S. at 635, courts

have generally applied intermediate scrutiny to prohibitions on the possession of firearms by

criminals.  In *Schrader*, for example, the Court of Appeals applied intermediate, rather than

strict, scrutiny to the application of a firearms disability to common law assault because

"common-law misdemeanants as a class cannot be considered law abiding and responsible." *Id.*

at 989.  *See also United States v. Williams*, 616 F.3d 685, 692-93 (7th Cir. 2010) (applying

intermediate scrutiny to reject as-applied challenge to Section 922(g)(1)); *United States v.

Chovan*, 735 F.3d 1127, 1137-38 (9th Cir. 2013) (upholding federal prohibition on firearm

possession by individuals convicted of domestic violence misdemeanors under intermediate

scrutiny, finding that the statute "does not implicate th[e] core Second Amendment right because

it regulates firearm possession for individuals with criminal convictions"); *Van Der Hule v.

Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014) (endorsing conclusion that § 922(g)(1) passes

"constitutional muster" under intermediate scrutiny); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121,

1126 (10th Cir. 2015) ("The risk inherent in firearms and other weapons distinguishes the

Second Amendment right from other fundamental rights that have been held to be evaluated

under a strict scrutiny test, such as the right to marry and the right to be free from viewpoint

discrimination, which can be exercised without creating a direct risk to others.").

> ### 2. Congress Advanced a Substantial Governmental Interest by Concluding that Individuals with a Criminal Record Like Plaintiff's Conviction for Driving While Impaired Should Not Be Permitted to Own Firearms.

To satisfy intermediate scrutiny, "a statutory classification must be substantially related

to an important governmental objective." *Schrader*, 704 F.3d at 989; *see also Clark v. Jeter*, 486

U.S. 456, 461 (1988); *Heller II*, 670 F.3d at 1258. In evaluating the fit between the challenged

statute and the governmental interest, the Court of Appeals has affirmed that it "accords

substantial deference to the predictive judgments" of the legislature, while still subjecting the law

to "meaningful judicial review." *Id*. at 1259. "The challenged law need not be the least

restrictive or least intrusive means of achieving the government's interest." *Ward v. Rock

Against Racism*, 491 U.S. 781, 798 (1989). "The fit between the challenged regulation and the

asserted objective need only be reasonable, not perfect." *Schrader*, 704 F.3d at 990.

The Government has an "obviously important" governmental interest in curbing crime by

keeping firearms from criminals. *See Schrader*, 704 F.3d at 989-90. Here, the principal

objective of § 922(g)(1) is "to keep firearms away from the persons Congress classified as

potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976); *see

also United States v. Schmidt*, 571 F.3d 743, 747 (8th Cir. 2009) ("the Supreme Court [has]

explained Congress' purpose in drafting a federal statute prohibiting felons from possessing

firearms was 'to keep guns out of the hands of those who have demonstrated that 'they may not

be trusted to possess a firearm without becoming a threat to society'") (quoting *Scarborough v.

12

*United States*, 431 U.S. 563, 572 (1977)); *United States v. Daugherty*, 264 F.3d 513, 516 n.7 (5th

Cir. 2001) ("Congress' intent in enacting § 922(g) . . . was to keep firearms out of the hands of

presumptively risky people") (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.

6 (1983)).  Section 922(g)(1) was enacted to "keep guns out of the hands of those who have

demonstrated that they may not be trusted to possess a firearm without becoming a threat to

society."  *Small v. United States*, 544 U.S. 385, 393 (2005); *Burrell v. United States*, 384 F.3d

22, 27 (2d Cir. 2004) (Section 922(g)(1) "was one of several measures enacted by Congress to

'prohibit categories of presumptively dangerous persons' from possessing firearms") (quoting

*Lewis v. United States*, 445 U.S. 55, 64 (1980)).[4]

     This interest is important and substantial regardless of whether or not the underlying

offense involved intentional violence.  In *Vongxay*, the Ninth Circuit recognized that, by

excluding these categories of persons from firearms possession, § 922(g)(1) is intended to protect

"the security of [] fellow citizens," an interest served "[i]rrespective of whether the offense was

violent in nature," because "a felon has shown manifest disregard for the rights of others."  594

F.3d at 1117 (quoting *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004)); *accord United

States v. Garrett*, 903 F.2d 1105, 1115 n.13 (7th Cir. 1990) ("goal of § 922(g) is to keep firearms

away from certain persons, such as those convicted of serious crimes, who might be expected to

misuse them").  Indeed, as explained above, Congress explicitly amended the predecessor statute

to 18 U.S.C. § 922(g) to "delete the words 'crime of violence' and substitute therefor the words

'crime punishable by imprisonment for a term exceeding one year.'"  *United States v.

Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972) (quoting Pub. L. No. 87-342).

---

[4] Protecting public safety and combating crime are well-established *compelling* governmental interests.
*See United States v. Salerno*, 481 U.S. 739, 748-50 (1987) (noting that the Supreme Court has "repeatedly
held that the Government's regulatory interest in community safety can, in appropriate circumstances,
outweigh an individual's liberty interest"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate
and compelling state interest in protecting the community from crime cannot be doubted.").

Restricting access to firearms by such persons is of critical importance to human life: in recent years, between 500 and 600 Americans have annually been killed by the accidental discharge of firearms.  *See* Table 18, "Number of deaths . . . by mechanism and intent of death: United States, 2013," National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/nvsr/nvsr64/nvsr64_02.pdf (505 unintentional firearms deaths in 2013); National Safety Council, Injury Facts (2012) at 137 (592 unintentional firearms deaths in 2008).  Indeed, two Justices of the Supreme Court have explicitly recognized that persons possessing firearms may endanger others not only by using firearms to commit crimes, but by "accidental misuse that may result in death or serious injury." *McDonald v. Chicago*, 561 U.S. 742, 885 (2010) (Stevens, J., dissenting), *see id.*, 561 U.S. at 799 (Scalia, J., concurring) (acknowledging the risk identified by Justice Stevens); *accord Wasylow v. Glock*, 975 F. Supp. 370, 380 (D. Mass. 1996) ("That death may result from careless handling of firearms is known by all Americans from an early age").

Here, applying Section 922(g)(1) directly and substantially relates to the important protective purpose served by the Gun Control Act.  As the D.C. Circuit observed in *Schrader*, "[i]n enacting Section 922(g)(1), Congress determined – reasonably in our view – that in order to accomplish the goal of preventing gun violence, firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them."  704 F.3d at 990. Plaintiff's conviction demonstrates the "manifest disregard" for others' rights that is sufficient to satisfy intermediate scrutiny.  *Vongxay*, 594 F.3d at 1117; *see also United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (finding drug-dealing offenses not to be "so tame and technical as to be insufficient" to survive intermediate scrutiny).  For this reason, the Courts of Appeals have regularly "upheld applications of § 922(g)(1) even to non-violent felons." *United*

*States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (collecting cases); *see also Drake v. Filko*,

724 F.3d 426, 438 (3d Cir. 2013) ("[W]e refuse to hold that the fit [between the challenged

firearms law and the state's interest in protecting public safety] is not reasonable merely because

New Jersey cannot identify a study or tables of crime statistics upon which it based its predictive

judgment").[5]

      Plaintiff's history of negligently and dangerously driving an automobile – another

dangerous instrumentality that may kill when handled with insufficient care – is substantially

related to Congress's intent "to keep firearms out of the hands of presumptively risky people,"

*Daugherty*, 264 F.3d at 516 n.7, as well as the historic tradition of protecting the citizenry from

"crimes" and " "real danger[s]."   *Skoien*, 614 F.3d at 640.  Plaintiff cannot seriously maintain

that drunk driving is not a serious crime or is not relevant to these concerns.  The Supreme Court

has observed that "[n]o one can seriously dispute the magnitude of the drunken driving problem

or the States' interest in eradicating it" and that "Media reports of alcohol-related death and

mutilation on the Nation's roads are legion." *See Mich. Dept. of State Police v. Sitz*, 496 U.S.

---

[5] Empirical evidence shows a substantial relationship between Section 922(g)(1) as applied to convicted criminals such as Plaintiff and Congress's goals of protecting public safety and combating violent crime. Convicted offenders as a group – including those convicted of crimes that did not involve violence – present a significant risk of recidivism for violent crime.  *See Kaemmerling v. Lappin*, 553 F.3d 669, 683 (D.C. Cir. 2008) ("Other courts . . . have observed that nonviolent offenders not only have a higher recidivism rate than the general population, but certain groups – such as property offenders – have an even higher recidivism rate than violent offenders, *and a large percentage of the crimes nonviolent recidivists later commit are violent*."); Mona A. Wright *et al*., Effectiveness of Denial of Handgun Purchase to Persons Believed to Be at High Risk for Firearm Violence, 89 Am. J. of Public Health 88, 89 (1999) (concluding, based on a study of handgun purchases denied as a result of a prior conviction or arrest for a crime punishable by imprisonment or death, that "denial of handgun purchase is associated with a reduction in risk for later criminal activity of approximately 20% to 30%," and that among individuals with prior crimes, "[handgun] purchasers were 2 to 4 times as likely to be charged with new offenses as those who were" unable to purchase guns).

444, 451 (1990); *see also Begay v. United States,* 553 U.S. 137, 141 (2008) ("Drunk driving is an extremely dangerous crime.").[6]  As the Massachusetts Supreme Court explained in a tort case:[7]

> The dangers of drunk driving, both to intoxicated drivers, passengers in their vehicles, the motoring public, and those lawfully on the highways, have been abundantly documented in terms of "waste of human life," the likelihood of serious injury, and the enormous costs to society.  Drunk driving is an egregious violation of public safety against which the public, and public safety officers, cannot guard completely.  A drunk driver in his automobile becomes akin to a lethal weapon on the highways in terms of the destruction that can be inflicted.

*Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 452 Mass. 639, 651, 897 N.E.2d 50, 60 (S. Ct. Mass. 2008) (internal citations omitted).[8]

Here, Congress reasonably relied on the judgment of the state legislature that drunk driving is a serious offense showing manifest disregard for the law and the safety of others, and determined that individuals with such convictions should be prohibited from owning firearms. Because disarmament of individuals like Plaintiff is substantially related to the important governmental objectives of crime prevention and gun safety, the Court should reject Plaintiff's as-applied constitutional challenge.

---

[6] The Supreme Court ultimately held that Congress did not intend for drunk driving to be treated as a "violent felony" for the purposes of the Armed Career Criminal Act.  553 U.S. at 139.  Congress chose to define the category of criminals subject to a firearms disability differently.  While drunk driving may not be a "violent felony," as the Supreme Court noted, it is both serious and extremely dangerous.

[7] Everyday in the United States, almost 30 people die in drunk-driving accidents; in 2013, over 10,000 people died in such accidents.  *See* CDC, Impaired Driving, *available at* http://www.cdc.gov/motorvehiclesafety/impaired_driving/impaired-drv_factsheet.html.  *See also* Massachusetts Fact Sheet, *available at* http://www.cdc.gov/motorvehiclesafety/pdf/impaired_driving/drunk_driving_in_ma.pdf.

[8] Justice Scalia, in dissenting from denial of certiorari in a Fourth Amendment case, noted that the Supreme Court has even "recognized that the dangers posed by drunk drivers are unique, frequently upholding anti-drunk-driving policies that might be constitutionally problematic in other, less exigent circumstances."  *Virginia v. Harris*, 558 U.S. 978 (2009) ("There is no question that drunk driving is a serious and potentially deadly crime.") (Scalia, J., dissenting).

3.      **Plaintiff is Not Entitled to an Exemption from this Facially Reasonable Law.**

Plaintiff argues that because he is "responsible" and "law-abiding," and because several years have passed since his drunk driving conviction, his "unique personal circumstances" make it "unconstitutional to apply against Baginski, personally, the firearms prohibition" of Section 922(g)(1).  Compl. ¶¶ 25-26.  But Plaintiff is not entitled to any special treatment, regardless of his "unique personal circumstances."

Plaintiff essentially attempts to add a third step to the *Heller* inquiry, and claims that, even if Section 922(g)(1) is constitutional as applied to his conviction, it is unconstitutional as applied to him personally.  But as numerous courts have recognized, intermediate scrutiny does not require the government to show that each individual encompassed within a statutory proscription poses a particular danger.  *See, e.g., United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012) ("[T]he prohibitory net cast by [the statute] may be somewhat over-inclusive given that not every person who falls within it would misuse a firearm . . . if permitted to possess one," but "[t]his point does not undermine the [statute's] constitutionality . . . because it merely suggests that the fit is not a perfect one[] [and] a reasonable fit is all that is required under intermediate scrutiny."); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (rejecting defendant's contention that "his conviction for possession of firearms by a felon, without any further showing of violent intent, violates his Second Amendment rights"); *see also United States v. Tooley*, 717 F. Supp. 2d 580, 597 (S.D. W. Va. 2010) ("Section 922(g)(9) is of course overbroad in the sense that not every domestic violence misdemeanant who loses his or her right to keep and bear arms would have misused them against a domestic partner or other family member.  Under intermediate scrutiny, however, the fit does not need to be perfect, but only be reasonably tailored in proportion to the important interest it attempts to further.  As such,

17

intermediate scrutiny tolerates laws that are somewhat overinclusive."); *United States v. Miller*, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("Although prohibiting gun possession by nearly all felons might not be the most precisely focused means to achieve this end, intermediate scrutiny, by definition, permits Congress to paint with a broader brush.").

In *Schrader*, the D.C. Circuit refused to decide an argument that Section 922(g)(1) was "invalid as applied to Schrader specifically," finding that the argument was not properly raised by the complaint. 704 F.3d at 991-92. In dicta, the Court raised some question as to whether the plaintiff would fall outside the class of "law-abiding responsible citizens whose possession of firearms is, under *Heller*, protected by the Second Amendment." *Id*. But the Court did not decide the question or hold that it was necessary to conduct a case-by-case inquiry into the personal circumstances of any criminal who believes that he or she personally is "responsible" and therefore entitled to an exception to the rule. Congress reasonably decided to premise a firearms disability on the seriousness of the underlying crime, not on relative sympathy attached to individual defendants. Indeed, elsewhere, the Court noted that noted that "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons." *Id*. at 991. Section 922(g)(1), as applied to Plaintiff's conviction, readily satisfies intermediate scrutiny, and Congress is not required to make an exception for individuals with convictions for dangerous crimes. The conviction alone is sufficient for Congress to determine that the person should be prohibited from owning a firearm. And indeed, Plaintiff has pleaded no facts that could distinguish him from other criminals with similar convictions. He was convicted of a highly dangerous crime with a potentially lethal instrumentality.[9]

---

[9] Plaintiff does not state what makes his situation 'unique' other than apparently not having been convicted of a crime since 2004, which hardly makes him unique.

The D.C. Circuit has made clear that "[i]n the context of firearm regulation, the legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Schrader*, 704 F.3d at 990 (internal citations omitted).  In light of the "substantial deference" afforded to "predictive judgments" made by Congress when reviewing the constitutionality of statutes, *id*., applying Section 922(g)(1) to Plaintiff satisfies intermediate scrutiny.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action.


Dated:  November 24, 2015                    Respectfully Submitted,

                                             BENJAMIN C. MIZER
                                             Principal Deputy Assistant Attorney General

                                             JOHN R. TYLER
                                             Assistant Director, Federal Programs Branch

                                             */s/Amy E. Powell*
                                             AMY E. POWELL
                                             Trial Attorney
                                             U.S. Department of Justice, Civil Division
                                             Federal Programs Branch
                                             20 Massachusetts Ave., N.W., Room 5377
                                             Washington, D.C. 20530
                                             Tel.:    (202) 514-9836
                                             Fax.:    (202) 616-8470
                                             Email: amy.powell@usdoj.gov

## CERTIFICATION OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants by First Class Mail or Federal Express, on the 24th of November, 2015.

/s/Amy E. Powell
AMY POWELL
November 24, 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Mark BAGINSKI, | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 15-1225-RC |
| Loretta LYNCH, in her capacity as ATTORNEY | ) | |
| GENERAL of the United States, *et al.*, | ) | |
| | ) | |
|   Defendants. | ) | |
| | ) | |

### [PROPOSED] ORDER

Having considered the Defendants' Motion to Dismiss, the motion is HEREBY

GRANTED; and the action is DISMISSED WITH PREJUDICE.

SO ORDERED.

_____

U.S. DISTRICT COURT JUDGE