IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Mark BAGINSKI, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>Loretta LYNCH, in her capacity as ATTORNEY )<br>GENERAL of the United States, et al., )<br>)<br>  Defendants. )<br>) | Case No. 15-1225-RC |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
NOTICE OF SUPPLEMENTAL AUTHORITY.**

Defendants respectfully submit this response to Plaintiffs' Notice of Supplemental Authority in connection with Defendants' pending motion to dismiss. As explained in Defendants' Motion to Dismiss, Plaintiffs' statutory claim is foreclosed by binding precedent in the D.C. Circuit, and his constitutional claim fails because Congress may constitutionally disarm individuals like Plaintiff, who, following conviction for a serious, dangerous crime, no longer fall within the category of law-abiding, responsible persons entitled to Second Amendment protections. The fractured *en banc* decision of the Third Circuit in which Plaintiff now seeks refuge, *Binderup v. Att'y Gen. of the U.S.*, --- F.3d ---, 2016 WL 4655736 (3d Cir. 2016), does not change this analysis and should not affect this Court's decision

The Court in *Binderup* rejected the same statutory argument made by Plaintiff here, and confirms Defendants' analysis in their motion to dismiss. And, although the *Binderup* Court upheld an as-applied constitutional challenge by an 8-7 vote, no single rationale commanded a majority, and application of either plurality opinion to this matter would nevertheless yield

1

dismissal of Plaintiff's claims.[1]  And, in any event, a plurality opinion from the Third Circuit does not control the analysis in this case.

The reasoning in the seven-judge dissent by Judge Fuentes fully supports the Government's position, holding that "the Second Amendment . . . does not prevent Congress from deciding that convicted criminals should not have access to firearms."  *Id*. at *33.  Reviewing the historical record and analysis from multiple circuits, Judge Fuentes concludes that those convicted of serious crimes may be constitutionally prohibited from owning firearms under the Supreme Court's analysis in *Heller*, *id*. at 39, and further reasons that Congress can reasonably rely on a state's choice of potential punishment to determine seriousness.  *Id*. at *43.  Judge Fuentes goes on to conclude that the disarming those plaintiffs would survive intermediate scrutiny, rejecting the plaintiffs' demand for a perfect fit between the challenged regulation and asserted objective.  *Id*. at *50.  Quoting the D.C. Circuit, the dissent notes that "the legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and manner to combat those risks."  *Id*. (quoting *Schrader v. Holder,* 704 F.3d 980, 990 (D.C. Cir. 2013)).  Finally, the dissent explains the extraordinary and difficult administrative problems with addressing as-applied constitutional challenges on an individualized basis, especially if an individual's right to bear arms may change as time passes.

Even if the standard applied in either of the *Binderup* plurality opinions is applied in this case, however, Plaintiff's claim should still be dismissed.  At least ten of the fifteen judges on the

---

[1] There were three separate opinions, none of which commanded a majority of the *en banc* panel. Plurality opinions by Judge Ambro and Judge Hardiman found that Section 922(g)(1) was unconstitutional as-applied to these particular plaintiffs.  A dissent by Judge Fuentes (joined by six other judges) found that it was constitutional.

*en banc* panel explicitly rejected the notion that § 922(g)(1) is unconstitutional as applied to non-violent criminals.[2] Citing *Heller*, the plurality opinion by Judge Ambro noted that "[t]he category of 'unvirtuous citizens' [who are precluded from possessing firearms] is . . . broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or non-violent." *Id*. at *9. Suggesting that "the category of serious crimes changes over time as legislative judgments regarding virtue evolve," *id*. at *11, the Judge Ambro opinion considered a non-exclusive list of factors to determine whether a crime is "serious."

Although Judge Ambro concluded that the crimes of corruption of a minor and carrying a handgun without a license were not sufficiently "serious," the same cannot be said of drunk driving, which kills nearly ten thousand Americans each year. Mr. Baginski operated a potentially lethal weapon while drunk and fled the scene of an accident. In an era in which the carnage caused by drunk drivers is well-known, the decision to operate a vehicle under the influence is surely "serious," and displays a lack of "virtue." Significantly, Judge Ambro's opinion specifically rejects any possibility that "the passage of time or evidence of rehabilitation could restore Second Amendment rights that were forfeited" due to commission of a serious offense. *Id*. at *10; *compare* Complaint, ECF No. 1, at ¶ 26 (asserting the "passage of time since [Plaintiff's] conviction" and [Plaintiff's] generally law-abiding record" as a basis for his claim).[3]

---

[2] Indeed, multiple other circuit courts have suggested that the distinction between violent and non-violent crimes does not matter for purposes of § 922(g)(1). *See United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (concluding that "felons are categorically different from the individuals who have a fundamental right to bear arms"); *United States v. Rozier,* 598 F.3d 768, 771 (11th Cir. 2010) (holding that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment").

[3] Moreover, under Judge Ambro's opinion, even if Mr. Baginski's crime could be deemed not serious despite the danger it posed and its treatment by the Massachusetts legislature, the court should proceed to analyze application of the section 922(g)(1) under intermediate scrutiny. For the reasons set out in Defendants' Motion to Dismiss, the statute easily satisfies such scrutiny here. *See* ECF No. 10, at 11-19.

Application of the standards set forth in this plurality opinion in *Binderup* therefore does not provide a basis by which Plaintiff can resist dismissal.

Even application of the logic of the plurality opinion in *Binderup* authored by Judge Hardiman would not help Plaintiff here. Judge Hardiman's opinion takes an expansive reading of the standard of review of firearms laws required by *Heller*, and suggests that *any* law which prohibits owning a firearm is unconstitutional if applied to individuals entitled to Second Amendment rights. Nevertheless, the logic of Judge Hardiman's opinion focuses on whether the individual presents a *danger*: "the historical record leads us to conclude that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed." *Id*. at *25. Drunk driving is extraordinarily dangerous, and an examination of the scope of the Second Amendment through the lens of danger to the public should lead to the conclusion that Plaintiff, having been convicted of this crime, falls outside the scope of the Second Amendment.[4] Plaintiff has therefore not "demonstrated that [his] subsequent behavior confirms [his] membership among the class of responsible, law-abiding citizens to whom Second Amendment protection extends." *Id*. at *30.

In the Government's view, the dissent in *Binderup* is the most persuasive of the three opinions, but even the other two opinions written in that case do not provide support for Mr. Baginski's claims here.

---

[4] In *dicta* in a footnote, Judge Hardiman's opinion suggests that drunk driving is not the sort of offense that traditionally motivated felon dispossession because it is not "violent." *See* 2016 WL 4655736, at *29 n.24. But this assertion is inconsistent with the reasoning of the remainder of the opinion and its focus on *dangerousness*; driving under the influence displays gross recklessness with respect to human life, and the Massachusetts legislature reasonably treated it as a serious crime.

September 26, 2016                            Respectfully submitted,

                                                                            BENJAMIN C. MIZER
                                                                            Principal Deputy Assistant Attorney General

                                                                            JOHN R. TYLER
                                                                            Assistant Director, Federal Programs Branch

                                                                            */s/Amy E. Powell*
                                                                            AMY E. POWELL
                                                                            Trial Attorney
                                                                            U.S. Department of Justice, Civil Division
                                                                            Federal Programs Branch
                                                                            20 Massachusetts Ave., N.W., Room 5377
                                                                            Washington, D.C. 20530
                                                                            Tel.:    (202) 514-9836
                                                                            Fax.:   (202) 616-8470
                                                                            Email: amy.powell@usdoj.gov

## CERTIFICATION OF SERVICE

      I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants by First Class Mail or Federal Express, on the 26th of September, 2016.

                                              */s/Amy E. Powell*
                                              AMY POWELL
                                              September 26, 2016